W. S. WOODS v. J. T. FINLEY et al.

(Filed 30 November, 1910.)

1. **Notes, Joint and Several—Several Liability Only—Parol Evidence.**
   When a note sued on is, upon its face, joint and several, evidence is incompetent, as contradictory of the written instrument, of a contemporaneous oral agreement that the makers should only be liable each for his *pro rata* part of the note.

2. **Notes, Joint and Several — Payment in Discharge — Several Liability—Evidence.**
   When the holder of a note appearing to have been jointly and severally executed by several makers, accepts and collects a check expressing upon its face to be in payment of the drawer's "share" of the note, the check is competent evidence, as tending to show that the owner agreed to receive the payment in discharge of the drawer's liability upon the note.

3. **Notes—Endorsement—Equitable Owner—Fraud—Evidence.**
   Negotiation of a note payable to order is "by the endorsement of the holder and is completed by delivery," Revisal, 2178; and the introduction of the note in evidence without endorsement raises the presumption of equitable ownership and assignment, and without proof of endorsement the holder is not one in due course, and takes subject to the equities existing in favor of the maker, and in such instance fraud in its procurement by the payee may be shown.

153—32

APPEAL by defendants Finley, Brame et al. from *E. B. Jones,
J.*, at the Spring Term, 1910, of WILKES.

The facts are stated in the opinion of the court.

*W. W. Barber, Manly & Hendren* and *Finley & Hendren* for
appellants.

*Oscar C. Dancey* for appellees.

CLARK, C. J.   McLaughlin Bros., of Cleveland, Ohio, through
their agent, sold to certain parties in Wilkesboro, N. C., a stal-
lion at the price of $3,000.   The purchasers executed to the ven-
dors three notes for $1,000 each, payable 1 July, 1907.   These
notes were signed by twelve parties and were expressed as being
joint and several.   At the same time the notes were executed,
the vendors executed in writing a guarantee as to the quality of
the horse, and that if he was not satisfactory upon his return in
good condition, they would replace him with another at the
same price.   The vendees becoming dissatisfied with the horse,
J. T. Finley and five others returned the horse and received
another. · The other six (Brame and five others) declined to
have any part in accepting the other horse, contending that by
reason of the horse not coming up to the guarantee they were
released from their liability by reason of fraudulent represen-
tations which they set forth in their answer.   This action is
upon one of the notes for $1,000.

The plaintiff alleges in his complaint that he was a holder in
due course, and took the note by assignment of the payees for
value and without notice before maturity.   This is denied in the
answer.   There was evidence, if believed, that the plaintiff be-
came the holder of the note for value and before maturity and
without notice of any equities, but there was no evidence that
the note was endorsed.

### FINLEY'S APPEAL.

J. T. Finley and four others alleged in their answer that they
had paid their full *pro rata* part of said note, and that judg-
ment should be taken against the other defendants alone, if any
should be rendered.   The plaintiff admitted the receipt by him

from Finley and others of the amount claimed, but contended that such payments had been credited upon the note, and that he was entitled to judgment against all the defendants, jointly and severally, for the balance due on said note.

The note upon its face was joint and several and his Honor therefore properly excluded evidence offered to show an alleged contemporaneous oral agreement that each of the signers should be liable only for his *pro rata* part of the notes. This would have been to contradict the written contract. But it was error to refuse in evidence the checks given by Finley and his associates in this appeal, in making payments upon said notes. Each of these checks expressed on its face that it was to pay the drawer's "share of McLaughlin Bros. notes." These checks were accepted by the plaintiff and endorsed by him were paid by the drawee. They are competent evidence that the plaintiff agreed to receive from said parties such payments in discharge of their liability upon the note. *Petit v. Woodlief,* 115 N. C., 120; *Kerr v. Sanders,* 122 N. C., 635; *Cline v. Rudisill,* 126 N. C., 524; *Wittkowsky v. Baruch,* 127 N. C., 315; *Ore Co. v. Powers,* 130 N. C., 152; *Armstrong v. Lonon,* 149 N. C., 434; *Drewry v. Davis,* 151 N. C., 297.

It is true that if some of the other signers of the notes should be insolvent and those not so should be compelled to pay the whole of the balance due on the note, it is possible that they may set up against the plaintiff an equitable demand for relief as to so much of the note as by reason of the release of Finley and associates they are compelled to pay, on account of the insolvency of some of their associates. But this matter is not before us.

In rejecting in evidence the checks given by Finley and others there was error.

### IN BRAME'S APPEAL.

It is true that the mere averment in the answer denying the endorsement does not rebut the presumption raised by law that the holder is the rightful owner of the note, *Causey v. Snow,* 120 N. C., 285. But to make the plaintiff a holder in due course of a negotiable instrument, payable to order, it is essential that

the same shall be endorsed. In the absence of proof of such endorsement he holds it subject to any valid defense open to the maker and it is error to exclude evidence tending to show fraud. *Mayers v. McRimmon,* 140 N. C., 640. That case cited with approval from *Tyson v. Joyner,* 139 N. C., 69, where *Walker, J.,* held: "In an action on a note it is error to hold that the mere introduction of the note with the name of the endorsee written on the back is evidence of its endorsement by such endorsee so as to vest the legal title in the plaintiff and cut off any defense against the endorsee, as the signatures of the endorsers, whose endorsement is required to vest the legal titles must be proved."

To constitute a holder in due course, one of the requirements is that the instrument must be negotiated to the holder, and Revisal, 2178, defines negotiation of a note payable to order as being "by the endorsement of the holder and completed by delivery." Therefore, it was said in *Tyson v. Joyner, supra,* that "the introduction of the note by the plaintiff raised the presumption that she was its owner, but only the equitable owner and assignee, and it was subject in her hands to any equities or other defenses of the maker against prior holders." And further on in the same case it is said, referring to Revisal, 2208: "When it is said in the cases that there is a *prima facie* presumption of law in favor of every holder of negotiable paper to the extent that he is owner of it; that he took it for value and before dishonor and in the regular course of business, it will be found that reference is made to a holder by endorsement to an instrument which, under the law merchant was not required to be endorsed, but which was negotiable by delivery." The whole subject is so fully discussed and so clearly by *Walker, J.,* in that case that nothing can be added.

In *Steinhilper v. Basnight* and *Myers v. Petty,* both at this term, the above authorities were cited and affirmed. There being no evidence that the note had been endorsed by McLaughlin Bros. to the plaintiff, the judge erred in excluding evidence offered to show fraud and fraudulent representations by the payee.

In both appeals there must be a

New trial.